**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:24-CV-00455-CHL**

**CHARLES P.,[1]**                                                                           **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**                                  **Defendant.**

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Complaint filed by Plaintiff, Charles P. ("Claimant"). Claimant seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). (DN 1.) Claimant and the Commissioner each filed a Fact and Law Summary and/or supporting brief. (DNs 9, 9-1, 11.) Claimant also filed a reply. (DN 12.) The Parties have consented to the jurisdiction of a Magistrate Judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 5.) Therefore, this matter is ripe for review.

For the reasons set forth below, the final decision of the Commissioner is **AFFIRMED**.

**I.      BACKGROUND**

On April 27, 2022, Claimant applied for disability insurance benefits under Title II ("DIB"). (R. at 18, 66-67, 77-78, 188-97.) His application alleged disability beginning on March 10, 2020, due to left knee degenerative arthritis, tendinopathy of right wrist, ulcerative colitis and gastroenteritis, keratosis pilaris and acrochordon with acne, painful scar, status post right thyroidectomy, right knee degenerative arthritis, depressive disorder with anxious distress and insomnia, acute adjustment disorder with anxiety and depressed mood, tinnitus, migraines, and

---

[1] Pursuant to General Order 23-02, the Plaintiff in this case is identified and referenced solely by first name and last initial.

obstructive sleep apnea.  (*Id.* at 18, 67, 78.)  Claimant's application was denied initially and again on reconsideration.  (*Id.* at 88-92, 102-06.)

At Claimant's request, Administrative Law Judge ("ALJ") Stacey Foster ("the ALJ") conducted a hearing on Claimant's application on August 10, 2023.  (*Id.* at 112-13, 37-65.) Claimant attended the hearing by telephone with his non-attorney representative.  (*Id.* at 18, 39.) An impartial vocational expert also participated in the hearing.  (*Id.* at 39.)  During the hearing, Claimant testified to the following.  He only drives short distances.  (*Id.* at 42.)  He has experienced migraine headaches since December 2018, and while he takes medication for them, the medication makes him fall asleep for one-and-a-half to two hours after he takes it.  (*Id.* at 46-47.)  He has ulcerative colitis that causes him to have accidents and use the restroom frequently.  (*Id.* at 48-49.) He also has a skin condition called keratosis pilaris that itches.  (*Id.* at 49-50.)  He has degenerative joint disease in both knees that keeps him from walking or standing much, and he took over-the-counter medications to try and help with the pain when he was working.  (*Id.* at 51.)  He can only stand for twenty to thirty minutes at a time with his braces on and less time without them.  (*Id.*) Sitting isn't "so bad" though he has to take his braces off when he sits.  (*Id.*)  When he is walking, he does sometimes fall down.  (*Id.* at 52.)  He has problems with his right wrist that cause pain when he is trying to pick something up.  (*Id.*)  He could lift a half gallon of milk with one hand but to hold it for a while he would need both hands.  (*Id.* at 53.)  He also has problems gripping and performing fine handling because of his arthritis.  (*Id.*)  In public, he is cautious and feels like somebody is watching him; he stays away from people.  (*Id.* at 55-56.)  He gets distracted easily and cannot watch a movie from start to finish; it also may take him four or five hours to finish a one-hour television show.  (*Id.* at 56.)

The ALJ issued a partially-favorable decision on May 6, 2024. (*Id.* at 15-36.) Applying the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled, the ALJ made the following findings. First, the Claimant had not engaged in substantial gainful activity since March 10, 2020, his alleged onset date. (*Id.* at 20.) Second, Claimant had the following severe impairments: ulcerative colitis, migraines, obstructive sleep apnea, degenerative joint disease bilateral hands and knees, right lateral epicondylitis, benign paroxysmal positional vertigo ("BPPV"), obesity, mood disorder, attention deficit hyperactivity disorder ("ADHD"), posttraumatic stress disorder ("PTSD"), speech sound disorder, and learning disorder. (*Id.*) Third, Claimant did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.* at 21.) Fourth, since March 10, 2020, Claimant had the residual functional capacity ("RFC") to perform light work with the following exceptions:

> he cannot climb ladders, ropes or scaffolds. He can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs. The claimant can frequently reach overhead with the bilateral upper extremities. He can frequently handle with the bilateral upper extremities. He must avoid concentrated exposure to vibration and hazards. The claimant can understand, remember, and carry out simple instructions and procedures requiring 30 days to learn. He can maintain concentration, persistence, and pace for simple tasks involving little or no independent judgment and minimal variation. The claimant can have occasional interaction with supervisors and co-workers, but no interaction with the public. He can adapt to the pressures and changes of a routine work environment.

(*Id.* at 23.) Additionally at step four, the ALJ found that Claimant was unable to perform any of his past work as a cook, cleaner, receptionist, quality control technician, supply clerk, or cashier. (*Id.* at 28.) Fifth, and finally, considering Claimant's age, education, work experience, and RFC, prior to January 24, 2024, there were jobs that existed in significant numbers in the national economy that Claimant could perform. (*Id.* at 29.) However, beginning on January 24, 2024, there were no such jobs such that Claimant became disabled on that date and continued to be disabled

through the date of the ALJ's decision with his disability expected to last twelve months past the onset date. (*Id.* at 30.)

Claimant subsequently requested an appeal to the Appeals Council, which denied his request for review on June 6, 2024. (*Id.* at 2-7, 185-87.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a) (2024); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Claimant is presumed to have received that decision five days later. 20 C.F.R. § 422.210(c). Accordingly, Claimant timely filed this action on August 5, 2024. (DN 1.)

## II.    DISCUSSION

The Social Security Act authorizes payments of DIB to persons with disabilities. *See* 42 U.S.C. §§ 401-434. An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a) (2024).

### A.    Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have

supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

**B.    Five-Step Sequential Evaluation Process for Evaluating Disability**

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled. 20 C.F.R. § 404.1520 (2024). In summary, the evaluation process proceeds as follows:

(1)    Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2)    Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[2] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3)    Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4)    Does the claimant have the RFC to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

(5)    Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

---

[2] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1509 (2024).

20 C.F.R. § 404.1520(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C.    Claimant's Contentions

Claimant alleged that the ALJ erred in determining his RFC in her analysis of some of the opinion evidence in the record. First, Claimant argued that the ALJ erred in her analysis of the opinion of consultative examiner ("CE") Gianna Katsaros, M.D. ("Dr. Katsaros"). (DN 9, at PageID # 1939, 1947-51; DN 12, at PageID # 1975-77.) Second, Claimant argued that the ALJ erred in her assessment of the opinion of Lindsey Binns, PharmD, BCPP ("Pharmacist Binns"). (DN 9, at PageID # 1939, 1951-55; DN 12, at PageID # 1975, 1978-79.)

An ALJ's RFC finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c) (2024). The ALJ bases his or her determination on all relevant evidence in the case record. 20 C.F.R. § 404.1545(a)(1)-(4). Thus, in making his or her determination of a claimant's RFC, an ALJ must necessarily evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529 (2024). The ALJ must consider both severe and non-severe impairments in assessing a claimant's RFC. 20 C.F.R. § 404.1545(a)(2).

The applicable regulations set forth specific rules an ALJ must follow with regard to opinion evidence. Pursuant to 20 C.F.R. § 404.1520c, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" in the record regardless of its source.[3] 20 C.F.R. § 404.1520c(a). Instead, an ALJ will evaluate the "persuasiveness" of a medical opinion by reference to the five factors listed in the regulation: supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 404.1520c(a), (c). The regulations provide that the two most important factors are supportability and consistency and that an ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 404.1520c(a), (b)(2). However, the regulations state that "it is not administratively feasible for [an ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions . . . in [the] case record"; thus, an ALJ is not required to explicitly discuss how he or she weighed the factors of relationship with the claimant,[4] specialization, and other factors.[5] 20 C.F.R. § 404.1520c(b)(1)-(2). Where two medical opinions reach different conclusions but are "equally well-supported . . . and consistent with the record," an ALJ is required to state how he or she considered the other "most persuasive" factors in making his or her decision. 20 C.F.R. § 404.1520c(b)(3).

---

[3] This language indicates that the new regulation has done away with the controlling weight and other old rules regarding the weight to be ascribed to medical opinions. 20 C.F.R. § 404.1527(c)(2) (2024).

[4] In assessing this factor, the regulations require an ALJ to consider the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. § 404.1520c(c)(3).

[5] The regulations provide that an ALJ will consider any "other factors that tend to support or contradict a medical opinion." 20 C.F.R. § 404.1520c(c)(5). These factors include, but are not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim," "whether new evidence [ ] receive[d] after the medical source made his or her medical opinion . . . makes the medical opinion . . . more or less persuasive," and whether the medical source has "an understanding of [the] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(5).

The Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the requirement to "articulate how [he or she] considered the medical opinions" and "explain how [he or she] considered the supportability and consistency factors" under the new regulations. 20 C.F.R. § 404.1520c(b). *But see Adams v. Comm'r of Soc. Sec.*, No. 23-3284, 2023 WL 6366106, at *2 (6th Cir. Sept. 28, 2023) (noting that the new regulations "substantially reduce[ ] the ALJ's obligation to explain the basis for his or her assessment of medical opinions"); *Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 822 (6th Cir. 2020) (White, J. dissenting) (applying the new regulations and finding that "[t]he ALJ did not clearly analyze the supportability and consistency of the state consultants' assessments, as compared to other evidence in the record which supported [the plaintiff]'s claims"). However, district courts applying the new regulations within this circuit consistently apply the articulation requirement literally. *See, e.g.*, *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021) ("The administrative adjudicator has the obligation in the first instance to show his or her work, i.e., to explain in detail *how the factors actually were applied* in each case, to each medical source. Resorting to boilerplate language to support a finding of unpersuasiveness does not satisfy that obligation." (emphasis in original)); *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [her] reasoning."); *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20-CV-1364, 2021 WL 119287, at *1 (N.D. Ohio Jan. 13, 2021) (finding that "the [new] regulations do require that the ALJ clearly explain his consideration of the opinions and identify the evidence supporting his conclusions").

The Court will consider below Claimant's arguments related to the opinions of Dr. Katsaros and Pharmacist Binns.

### 1.  Dr. Katsaros's Opinion

Claimant argued that the ALJ erred in her assessment of the opinion of CE Dr. Katsaros, specifically in the ALJ's analysis of the supportability factor.[6]  Dr. Katsaros examined Claimant on September 6, 2022.  (R. at 1103-11.)  Dr. Katsaros recounted that Claimant indicated he struggled with migraines, pain in his knees and elbows, and ulcerative colitis though "his migraines give him the most issues on [a] day to day basis."  (*Id.* at 1104.)  She noted that Claimant reported abdominal pain, polyarticular joint pain, back pain, knee pain, migraines, PTSD, anxiety, and depression.  (*Id.* at 1105.)  As part of her examination, she documented that Claimant was in no acute distress; he was sitting comfortably; his abdomen was soft; his distal pulses were intact bilaterally in his upper and lower extremities; there was no edema generally in his extremities save for some swelling to "MCP joints digits 2-3 on bilateral hands"; his strength was normal in his upper and lower extremities; his grip strength was normal in his left hand and reduced to four of five on his right; his posture and gait were normal; he was able to heel to toe walk; he used "[i]ncreased effort to get from seated to standing"; and he didn't present with an assistive device but reported that his back, knee, and wrist braces were in his car.  (*Id.* at 1105-06.)  Based on her examination, Dr. Katsaros opined,

> [P]atient should be able to sit. Patient should be able to stand for 60 minutes.  Patient should be able to walk for 20-30 minutes on flat surface if he is abel [*sic*] to wear his prescribesd [*sic*] braces. Patient was able to get on and off the table without assistance or visible discomfort. No assistive device should be necessary. Patient should be able to lift and carry objects weighing approximately 5 pounds for 5 feet

---

[6] Claimant's brief did not offer any specific challenge to the ALJ's analysis of the consistency factor.  Instead, he merely pointed out that "[e]ven if the ALJ's consistency analysis were adequate here, the factor of supportability was not explained, and remand is warranted in this context." (DN 9, at PageID # 1950.)  Thus, the Court will not address the ALJ's consistency analysis as to Dr. Katsaros herein.

without difficulty. Patient should be capable of handling objects in both hands with good fine motor coordination.

(*Id.* at 1106.)  The ALJ found Dr. Katsaros's opinion "not particularly persuasive." (*Id.* at 25.) She noted that Dr. Katsaros's opined limitations "d[id] not appear consistent with objective exam findings," noting in particular that other than Dr. Katsaros's finding of swelling in Claimant's hands, mildly reduced grip strength in this right hand, and "increased effort getting from seated to standing, [ ] the exam was otherwise unremarkable." (*Id.*)  The ALJ also noted that Dr. Katsaros "provided a list of physical symptoms rather than diagnoses" and that her conclusion regarding Claimant's braces "appear[ed] to be somewhat speculative as the [C]laimant reportedly advised her that he had left all of his braces in the car." [7]  (*Id.*)

Claimant viewed the ALJ's description as insufficient to "properly or adequately explain how the factor of supportability led [the ALJ] to find the opinion unpersuasive." (DN 9, at PageID # 1949.)  In particular, he questioned how the ALJ's proffered discussion led her to find Dr. Katsaros's lifting and walking restrictions unpersuasive. (*Id.*)  Claimant argued that the ALJ's statement about unremarkable findings was inaccurate.  (DN 12, at PageID # 1976.)  The Court disagrees.  When viewed as a whole, the physical examination findings from Dr. Katsaros's opinion were largely unremarkable with a few exceptions.  The fact that the ALJ's discussion did not contain a point-by-point analysis of each and every finding in Dr. Katsaros's report does not invalidate her correct generalization of the same.  Claimant's attempt in his brief to point to Dr.

---

[7] Though both Claimant and the Commissioner reference other discussion by the ALJ of Dr. Katsaros's opinion, the remainder of the ALJ's discussion appears to address the consistency factor, not the supportability factor.  *Compare* 20 C.F.R. § 404.1520c(c)(1) (defining supportability by reference to the "objective medical evidence and supporting explanations presented by a medical source [ ] to support his or her medical opinion(s)"), *with* 20 C.F.R. § 404.1520(c)(2) (defining consistency by reference to the relationship between a medical opinion and "the evidence from other medical sources and nonmedical sources in the claim").  For example, the ALJ noted that Dr. Katsaros's finding were not consistent with Claimant's work history and limited and conservative treatment.  (R. at 25.)  These are sources external to Dt. Katsaros's own findings and explanations and are therefore not properly part of a supportability analysis.

Katsaros's notations regarding Claimant's reports of pain do not alter this conclusion because those reports are merely that: Claimant's reports, and they are distinguishable from the other physical exam findings referenced by the ALJ in her analysis. Likewise, Claimant's argument about the sufficiency of the ALJ's supportability analysis as a whole largely ignores the ALJ's commentary regarding Dr. Katsaros having included merely list of symptoms as opposed to diagnoses and having made speculative conclusions regarding Claimant's use of his braces, the latter of which is particularly relevant given the restrictions the Claimant wanted to ALJ to adopt. On the whole, the Court finds the ALJ's discussion a sufficient articulation of the supportability of Dr. Katsaros's opinion to comport with the regulatory requirement and an accurate summary of Dr. Katsaros's findings. Claimant's argument amounts to nothing more than a request that the Court reweigh the evidence relied on by the ALJ in reviewing Dr. Katsaros's opinion; the Court finds no basis to do so and finds the ALJ's analysis of Dr. Katsaros's opinion supported by substantial evidence.

## 2.    Pharmacist Binns's Opinion

Claimant also argued that the ALJ erred in her assessment of the opinion of Pharmacist Binns in both the ALJ's consistency and supportability analysis. (DN 9, at PageID # 1939, 1951-55; DN 12, at PageID# 1975, 1978-79.) Pharmacist Binns completed a Mental Impairment Questionnaire form on March 28, 2023. (R. at 1774-79.) On that form, she indicated that Claimant was transferred to her care in February 2022 and "ha[d] monthly to bimonthly appointments with [her] at th[at] time." (*Id.* at 1774.) She noted that Claimant's diagnoses included chronic PTSD, dysthymia, and ADHD for which he had been prescribed medication that could cause side effects including drowsiness, fatigue, constipation, dry mouth, weight gain, dizziness, GI upset, confusion, headaches, and blurred vision. (*Id.*) She described Claimant's treatment and response as follows: "Veteran getting medication management for his PTSD, dysthymia and comorbid

migraines since 2017 from the VA." (*Id.*) She documented that Claimant suffered from symptoms including decreased energy, generalized persistent anxiety, mood disturbance, difficulty thinking or concentrating, recurrent and intrusive recollections of a traumatic experience, persistent disturbances of mood or affect, hyperactivity, easy distractibility, and sleep disturbance. (*Id.* at 1775.) She opined that Claimant was unable to meet competitive standards in his ability to maintain attention for two-hour segments. (*Id.* at 1776.) She also opined that Claimant was seriously limited but not precluded in his abilities to remember work-like procedures, understand and remember short and simple instructions, carry out short and simple instructions, maintain regular attendance, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being unduly distracted, make simple work-related decisions, complete a normal workday and week without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, respond appropriately to changes in a routine work setting, and deal with normal work stress. (*Id.*) She opined that he was limited but satisfactory in his ability to ask simple questions and request assistance, accept instructions, respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavior extremes, and be aware of normal hazards and take appropriate precautions. (*Id.*) She noted in support that Claimant's ADHD, daily headaches, and ulcerative colitis would make both concentration and ability to sit difficult and that his PTSD in particular would make it difficult for Claimant to respond appropriately to changes in a routine work setting. (*Id.*)

The ALJ did not find Pharmacist Binns's opinion persuasive. (*Id.* at 26.) The ALJ noted that Pharmacist Binns saw Claimant "once a month or every two months for medication

management of his PTSD, dysthymia and migraines." (*Id.*) After summarizing Pharmacist

Binns's opinion, the ALJ stated,

> These limitations are not consistent with the other evidence and I do not find the opinion persuasive. The pharmacist had little direct experience with the claimant aside from a few brief medication management sessions. Her assessment is based largely on her understanding of symptoms as they are generally associated with particular diagnoses or medications, not with the claimant's own symptomatology. She also relies partly on physical conditions for which she never made any assessment or diagnosis of the claimant. Moreover, her assessment is inconsistent with the claimant's ability to complete college coursework and obtain a bachelor's degree during the period under consideration.

(*Id.*)

Claimant argued that the ALJ's supportability analysis was "flawed and inaccurate"

because the ALJ "misunderstood the role of *Counselor* Binns" such that the ALJ's suggestion that

"Binns was not a treating source and that she lacked a direct understanding of [Claimant]'s

individual symptomatology [wa]s simply inaccurate." (DN 9, at PageID # 1952-53 (emphasis

added).) But the Claimant's repeated references to *Counselor* Binns as opposed to *Pharmacist*

Binns suggest that it is Claimant, not the ALJ who misunderstood the provider's role. As observed

by the Commissioner in his response and uncontested by Plaintiff in his reply, the record contains

only two visits by Claimant to Pharmacist Binns: on March 1, 2022, and March 22, 2022. (*Id.* at

700-06, 710-17.) Thus, the ALJ's assessment that Pharmacist Binns had little direct experience

with the Claimant was an appropriate characterization of the record, which did not support that

Claimant met with Pharmacist Binns as frequently as she indicated in the report she authored on

March 28, 2023, nearly a year after her last interaction with Claimant. Given both her role in

Claimant's treatment and her limited experience with Claimant, it was likewise appropriate for the

ALJ to comment that Pharmacist Binns's assessment was based more on her own general

understanding than on the Claimant's own symptomatology. In particular, Pharmacist Binns's

opinion relies significantly on Claimant's diagnoses and symptoms to offer lengthy and detailed opinions regarding his functioning despite her having had minimal interactions with Claimant and none in recent proximity to her opinion. This weighs negatively on the persuasiveness of her opinion, and it was appropriate for the ALJ to note it. Thus, the Court finds no error in the ALJ's discussion of the supportability of Pharmacist Binns's opinion and finds the same supported by substantial evidence.

Claimant also argued that the ALJ's consistency analysis was insufficient because she did not indicate that Pharmacist Binns's opinion was consistent with two other opinions in the record, that of CE J. Lorilea Conyer, MA, LLP ("CE Conyer") and Dr. Victoria L. Vagnini ("Dr. Vagnini"), who evaluated the Claimant at the VA. (DN 9, at PageID # 1953-54.) But Claimant cited no authority requiring the ALJ to have included such discussion in her opinion. 20 C.F.R. § 404.1520c requires an ALJ to consider a medical opinion by reference to five specified factors, one of which is how consistent the medical opinion is with "the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). While this includes other opinion evidence, it does not necessarily require an ALJ to undertake an express comparative analysis between the opinion evidence of record in his or her decision. Here, the ALJ complied with this regulatory requirement throughout her discussion of Claimant's RFC.

The ALJ noted that Pharmacist Binns's opinion was not consistent with "[C]laimant's ability to complete college coursework and obtain a bachelor's degree during the period under consideration" and with "other evidence." (R. at 26.) Elsewhere in her decision, the ALJ had noted that Claimant had severe mental impairments that significantly limited his ability to perform basic work activities including mood disorder, ADHD, PTSD, speech sound disorder, and learning disorder. (*Id.* at 20.) The ALJ had found Claimant had a moderate limitation in his ability to

14

understand, remember, and apply information; interact with others; concentrate, persist, and maintain pace; and adapt or manage himself. (*Id.* at 22.) She summarized Claimant's testimony regarding his mental impairments including that his increased mental health symptoms led him to be banned from Fort Knox, his feeling that people are watching him, and that he is easily distracted. (*Id.* at 23-24.) The ALJ also summarized Claimant's mental health treatment, including that cognitive testing in 2019 resulted in him being diagnosed with ADHD and depressive disorder, though the record reflected little treatment until November 2019. (*Id.* at 25-26.) The ALJ noted that Claimant received mental health treatment through the VA, where his mental status examinations were largely normal. (*Id.* at 26.) The ALJ summarized the opinion of CE Conyer, who assessed moderate to marked limitations on Claimant's capacity to understand, remember, and carry out instructions towards performance of simple repetitive tasks. (*Id.*) CE Conyer also assessed moderate limitations on Claimant's ability to tolerate the stress and pressure of day-to-day employment, sustain attention and concentration toward performance of simple repetitive tasks, and respond appropriately to supervisors and coworkers in a work setting. (*Id.*) The ALJ found CE Conyer's opinion persuasive insofar as it assessed moderate limitations. (*Id.*) Notably, CE Conyer's opinion differed from that of Pharmacist Binns who had assessed only mild limitations on Claimant's ability to interact with others and a marked limitation on his ability to concentrate, persist, and maintain pace. (*Id.* at 1778.) The ALJ also noted that despite alleging he was unable to work there in part because of psychological symptoms, he was banned from the premises at Fort Knox after making threats to other employees though there was "no documentation of any other episodes of violent or aggressive behavior" in the record. (*Id.* at 27.) The ALJ also emphasized, as she did in her discussion of Pharmacist Binns's opinion, that the Claimant completed a bachelor's degree in mid-2021, "which suggest[ed] good comprehension

and focus when complaint with treatment." (*Id.*)   The ALJ summarized that these findings supported the limitations imposed in her determination of Claimant's RFC.

When considered against this backdrop, Claimant's argument about the ALJ's consistency analysis is nothing more than an impermissible attempt to ask the Court to reweigh the evidence. The ALJ expressly discussed CE Conyer's opinion, which differed from that of Pharmacist Binns despite Claimant's argument that the two were consistent.   As to Dr. Vagnini, while the ALJ did not explicitly reference the Disability Benefits Questionnaire completed by Dr. Vagnini in her decision, "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand.").   Dr. Vagnini had checked a box indicating that Claimant's "level of occupational and social impairment with regards to all mental diagnoses" could be described as follows: "Occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation." (R. at 724-25.)   While on some level this is consistent with Pharmacist Binns's opinion as Claimant alleged, given its generality, it is also consistent with the moderate limitation found by the ALJ in reliance on the evidence of record summarized above and which the ALJ's RFC accommodated.   Given the other evidence cited by the ALJ, the Court finds that the absence of discussion of Dr. Vagnini's conclusions was not error because the ALJ's analysis was otherwise supported by substantial evidence.   As that was the case, this Court's role is not to second-guess

the ALJ's conclusions. *Gayheart*, 710 F.3d at 374; *Smith*, 893 F.2d at 108; *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

Based on the above, the Court finds that the ALJ's analysis of Pharmacist Binns's opinion comported with the procedural requirements imposed by 20 C.F.R. § 404.1520c and was supported by substantial evidence.

## III.    CONCLUSION AND ORDER

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED**.  A final judgment will be entered separately.

September 5, 2025

Colin H Lindsay, Magistrate Judge
United States District Court

cc:    Counsel of Record

17